Judy Danelle Snyder
Law Offices of Judy Snyder
1000 SW Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 228-5027
Facsimile:  (503) 241-2249

Robert Zarco, Esq.
Himanshu M. Patel, Esq.
Alaina B. Siminovsky, Esq.
Zarco Einhorn Salkowski & Brito, P.A.
100 Southeast 2nd Street, Suite 2700
Miami, Florida  33131
Telephone:  (305) 374-5418
Telecopier:  (305) 374-5428

> Attorneys for Plaintiffs, Grove City Veterinary Service, LLC, Heather M. Fees, DVM, Heather Fees, DVM, LLC, Thomas L. Baltzell, DVM and Polaris Veterinary Service, LLC

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **GROVE CITY VETERINARY SERVICE, LLC,** an Ohio limited liability company, **HEATHER M. FEES, DVM**, an individual, **HEATHER FEES, DVM, LLC,** an Ohio limited liability company, **THOMAS L. BALTZELL, DVM,** an individual and **POLARIS VETERINARY SERVICE, LLC,** an Ohio limited liability company, | Case No.  3:13-cv-02276-AC **PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT BASED ON ITS SPOLIATION OF EVIDENCE FROM DR. THOMAS L. BALTZELL'S E-MAIL ACCOUNT** |
| Plaintiffs, | Request for Oral Argument  By Telephone Conference Expedited Briefing Schedule and Hearing Requested |
| v. | |
| **CHARTER PRACTICES INTERNATIONAL, LLC,** a Delaware limited liability company, | |
| Defendant. | |

### L.R. 7-1 CERTIFICATION

Pursuant to L.R. 7-1(a), Himanshu M. Patel, the undersigned counsel for Plaintiffs, certifies

that he has made a good faith effort to resolve this dispute on several occasions. He conferred

telephonically with counsel for Defendant, Rick Martson, Esq. and Caroline Harris Crowne, Esq.,

in the August/September 2014 time frame and requested that Defendant respond to Dr. Baltzell's request to access files from his email archive from 2010 to present.   Mr. Marston responded that it was not Defendant's obligation to assist Plaintiff to access such documents.

The undersigned further certifies that he conferred with Ms. Harris Crowne again on April 1, 2015, at which time Ms. Harris Crowne stated that any report from Banfield's IT department that Banfield deleted materials from Dr. Baltzell's email account were likely the product of miscommunication.

Finally, on May 7, 2015, the undersigned conferred by telephone with Ms. Harris Crowne and Mr. Marston, advised them of Plaintiffs' intention to file this motion for sanctions and again requested access to the email archive for Dr. Baltzell's account.   In response, Ms. Harris Crowne stated that Defendant does not maintain an e-mail archive folder and that this issue was likely the result of user error.   Following the telephone conference, the undersigned provided Ms. Harris Crowne with a copy of Defendant's blog posting discussing the email archive and an email from Defendant's IT Department following up with Dr. Baltzell regarding issues with his outlook archive.   Ms. Harris Crowne further responded that user error was likely the cause of Dr. Baltzell's email issues and requested that Dr. Baltzell follow certain instructions listed in Defendant's blog posting.   On May 7, 2015, Dr. Baltzell followed Ms. Harris Crowne's recommendation and was still unable to access the missing archive files.

## LR 7-2(b) CERTIFICATION

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 5,432 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

Defendant preserved certain email evidence contained in Dr. Baltzell's email account for its own use and, at the same time, removed Dr. Baltzell's access to the same emails, thereby destroying Dr. Baltzell's ability to review or use such documents in connection with this case.  In so doing, Defendant siphoned email communications from Dr. Baltzell's email account to create a secret contingent of highly relevant emails, including, but not limited to, six (6) emails that were used at the depositions of Dr. Baltzell and Dr. Fees.  A forensic investigation has determined that Defendant made various changes to Dr. Baltzell's email account throughout this litigation that adversely impacted Dr. Baltzell's access to his emails, including approximately seventy (70) email archive files and emails communicated prior to February 16, 2014.  Defendant refused Dr. Baltzell's requests for access to the documents and Plaintiffs' counsel's request that the information be provided to Plaintiffs in discovery.  Even if the initial covert restriction of Dr. Baltzell's access to his email account was unintentional, Defendant's continued refusal to provide and return access to the evidence in question is without any justification.    Through its actions, Defendant has prejudiced Plaintiffs' case and undermined the integrity of these proceedings.[1]

---

[1] This is not the first time that Defendant has been caught with its hand in the proverbial cookie jar.  In connection with the Goldberg Litigation that Plaintiffs have referenced in their Second Amended Complaint [ECF 64, ¶¶54-55], Defendant intercepted the franchisees' privileged and non-privileged communications and deleted emails from franchisees' email account.  Specifically, the undisputed evidence in the Goldberg Litigation reflected that Defendant illegally intercepted Dr. Goldberg's inbound and outbound e-mails from his Banfield.net e-mail account, including Dr. Goldberg's e-mails with his counsel in this litigation, via an automatic carbon copy to its Legal Counsel, Jennifer Eudy, Esq. ("Eudy"), and its outside legal counsel, Bruce Berning, Esq. ("Berning"), without Dr. Goldberg's knowledge or consent.

Second, similar to the circumstances here with Dr. Baltzell's e-mail account, the undisputed evidence in the Goldberg Litigation also revealed that Defendant deleted Dr. Goldberg's e-mails and documents that he maintained in his banfield.net e-mail account.  Specifically, the evidence reflected that Defendant deleted Dr. Goldberg's e-mail records from June 8, 2011 through August 21, 2012 in what appeared to be a scheme designed to "frame" Dr. Goldberg as the party that destroyed records and also to frustrate and hinder Dr. Goldberg's ability to defend against the allegations against him.  A copy of the Motion for Sanctions that Dr. Goldberg filed against this Defendant in the Goldberg Litigation is annexed to the Patel Decl. as Exhibit "A."

Accordingly, Plaintiffs, Grove City Veterinary Service, LLC, Heather M. Fees, DVM, Heather Fees, DVM, LLC, Thomas L. Baltzell, DVM and Polaris Veterinary Service, LLC (collectively "Plaintiffs") move for sanctions against Defendant Charter Practices International, Inc. ("Defendant") pursuant to Federal Rule of Civil Procedure ("FRCP') 37, LR 37–1 and the Court's inherent authority to sanction abusive and inappropriate litigation practices.  Appropriate sanctions include: (1) striking Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint [ECF 70]; (2) an adverse inference instruction; (3) monetary sanctions such as attorneys' fees and costs, including expenses in connection with Plaintiffs' retention of a forensic expert and drafting the instant Motion; and (4) any other sanctions the Court deems just and proper given the circumstances.

In the alternative, if this Honorable Court is not inclined to strike Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint; Plaintiffs respectfully request that this Honorable Court enter an Order: (i) compelling Defendant to provide Plaintiffs' forensic expert, John E. Jorgensen, with access to its Exchange Server so that Plaintiffs may determine the precise period of time for which Defendant deleted, removed and/or restricted Dr. Baltzell's access to his e-mails; (ii) awarding Plaintiffs their attorneys' fees and costs incurred in connection with their continued retention of Mr. Jorgensen; and (iii) granting such other and further relief as this Honorable Court deems just and proper.

This Motion is supported by the Declarations of Himanshu M. Patel ("Patel Decl."); John Jorgensen ("Jorgensen Decl.") and Dr. Thomas Baltzell ("Baltzell Decl."), the memorandum below and the balance of the file herein.

## MEMORANDUM

It appears that Defendant's litigation strategy centers around accessing its charter owners e-mail accounts and deleting the charter owner's access to his/her own e-mails so that the individual cannot successfully prosecute claims against Defendant and, at the same time, defend against claims brought by Defendant.

I.    **Introduction - Timeline of Key Events**

1.    Dr. Baltzell has an account entitled Thomas Baltzell, DVM hosted on Defendants'
Exchange email system.  Jorgensen Decl., ¶6, p. 4.  Defendant's IT Department controlled,
administered and stored email data relative to email accounts hosted on Defendant's server.  *Id.*

2.    On February 14, 2014 (after the litigation was initiated but prior to the
commencement of discovery), Defendant's IT department created a new Outlook repository on
Dr. Baltzell's computer.  Jorgensen Decl., ¶5, p. 3.  As a result, the local Outlook repository housed
on Dr. Baltzell's computer was overwritten.  *Id.*

3.    Also on February 14, 2014, Defendant served its Rule 26(a) Initial Disclosures
indicating that it intended to use e-mails and attachments to emails in support of its claims and/or
defenses in this case.  Patel Decl., ¶6.

4.    On March 3, 2014, Defendant, through its legal department, issued a litigation hold
to certain individuals intended to preserve information related to charter hospitals generally "or
plaintiffs' hospitals specifically."   *See* Declaration of Jennifer Eudy, ¶11, filed by Defendant on
November 3, 2014. [ECF 74].

5.    On March 17, 2014, Defendant initiated the "Exchange Personal Archiving" as
noted on their "dotBanfield" Blog post.  Jorgensen Decl., ¶7, p. 5.  Archiving was established and
certain features were set up by Defendant.  *Id.*  Any daily, weekly, or monthly IT generated email
system backups of the Defendant's Exchange email system would capture the "Archiving" email
boxes for each of the users, including Dr. Baltzell.  *Id.*  Defendant's IT Exchange Administrators
initiated a forced archive of all emails older than six months.  *Id.; see also* Exhibit E to Jorgensen
Decl.  Defendant's internal documents state that the archive will maintain the folder structure that
exists in the user's inbox.  *Id.* at Exhibit E, Defendant's Blog: Exchange Personal Archiving, page

2 of 4.

6.      In connection with developing Plaintiffs' case and consistent with his discovery
obligations, Dr. Baltzell undertook a search of physical and electronically stored documents.
Sometime in August 2014, Dr. Baltzell noticed that a portion of the archives folder maintained on
Defendant's server through which Dr. Baltzell conducts his business-related communications was
missing.  Baltzell Decl., ¶2.  The archived file was composed of one hundred fourteen (114)
separate folders that mirrored Dr. Baltzell's inbox.  *Id.*  The archived files contained a large volume
of the documents that were relevant to this case and also requested by Defendant.  *Id.*

7.      On August 15, 2014, and in light of the missing archived files, Dr. Baltzell notified
Defendant's IT Help Desk, in writing, that emails that he had not deleted were no longer located
in either Dr. Baltzell's inbox or archive folder and requested assistance on locating such
documents.  Baltzell Decl., ¶3; *see also* Emails between Dr. Baltzell and Defendant's IT
Department contained in Exhibit "1" to Baltzell Decl. and Exhibit C to Jorgensen Decl.

8.      On August 19, 2014, Dr. Baltzell requested access to email archives from 2010 to
present for production in this litigation.  Baltzell Decl., ¶5; *see also* Emails between Dr. Baltzell
and Defendant's IT Department contained in Exhibit "1" to Baltzell Decl. and Exhibit C to
Jorgensen Decl.  Defendant's Help Desk forwarded Dr. Baltzell's request to Defendant's Legal
Team later in the day.  Baltzell Decl., ¶5; *see also* Exhibit C to Jorgensen Decl.

9.      Defendant's IT Help Desk or technical support department never responded to Dr.
Baltzell's August 15, 2014 request.  Baltzell Decl., ¶6.  Defendant's Legal Team, to whom Dr.
Baltzell's request was forwarded on August 19, 2014, also did not respond to the request.  *Id.*

10.     In August/September 2014, Plaintiffs' counsel notified Defendant's attorneys
regarding the issues that Dr. Baltzell was facing with his email account and specifically advised
counsel regarding Dr. Baltzell's request to Defendant's technical support department requesting

access to his emails.  Defense counsel advised that Dr. Baltzell's request to Defendant's technical support department for access to his emails was not Defendant's concern or obligation. Patel Decl., ¶2.

11.    In late 2014/early January 2015, Denis Odobasic from Defendants' IT Department contacted Dr. Baltzell regarding the issues with his archive files.  *See* Exhibit D to Jorgenson Decl. After receipt of Mr. Odobasic's email, Dr. Baltzell noticed that some of his files seemed to slowly reappear in his outlook file.  Baltzell Decl., ¶7.

12.    On January 20, 2015, Defendant's IT department upgraded Dr. Baltzell's laptop computer to "Microsoft Office 2013", and a newer version of Outlook was installed.  Jorgensen Decl., ¶5, p. 3.  This activity caused a second Outlook .ost repository to be created and made the active .ost email repository.  *Id.*  Dr. Baltzell's Outlook repository was 1.5GB prior to the upgrade. After the upgrade, the repository was reduced by nearly half to 875 MB.  *Id.*

13.    On February 3, 2015, Mr. Odobasic advised Dr. Baltzell that his archive folder had been deleted.  *Id.* at ¶8.  By February 3, 2015, twenty-nine (29) of the original one hundred fourteen (114) archive folders had reappeared.  *Id.*

14.    Following the February 3, 2015 call from Mr. Odobasic, additional previously deleted archive files continued to reappear in Dr. Baltzell's email account.  *Id.*

15.    On March 13, 2015, there were thirty-five (35) folders out of the original one hundred fourteen (114) folders.  *Id.*

16.    At no point did Dr. Baltzell delete emails, documents or folders from his email account.  Baltzell Decl., ¶10.

17.    In order to investigate the missing files, Plaintiffs retained John E. Jorgensen from The Sylint Group, Inc., a forensic expert in technical information security.  Jorgensen Decl., ¶3, p. 2. Mr. Jorgensen, through a forensic analysis that he conducted of Dr. Baltzell's computer between

February and April 2015, confirmed that approximately seventy (70) folders that existed in Dr. Baltzell's archive email account that is maintained on Defendant's email system and the emails contained within such files, have been and/or were removed by Defendant from Dr. Baltzell's account. Jorgensen Decl., pp. 7-8. While some previously removed files were restored to Dr. Baltzell's email account, the approximate seventy (70) files in question have not been repopulated by Defendant to Dr. Baltzell's active email account and are not accessible to Dr. Baltzell. Jorgensen Decl., ¶8, p. 6. These missing files and their contents include emails prior to and including February 16, 2014. *Id.*

## II.    Legal Argument

### A.    Legal Standards Governing Sanctions

Discovery abuse damages the integrity and the efficacy of the judicial process. *See, e.g., G-K Properties v. Redev. Agency of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978) ("Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents"). Thus, courts may sanction parties who violate their discovery obligations under Rule 37 of the Federal Rules of Civil Procedure and the inherent power of federal courts to levy sanctions in response to abusive litigation practices. *U.S. ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1050 (2011) (Acosta, J.) (sanctions imposed for spoliation of evidence); *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (same).

The Ninth Circuit "has recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). This inherent power "includes the power to sanction the responsible party" for failing to preserve material evidence. *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002). Such sanctions are intended "to prevent unfair prejudice to litigants and to

insure the integrity of the discovery process." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Thus, courts evaluating potential sanctions usually focus on the culpability of the spoliator and the resulting prejudice to the innocent party. *See, e.g., Taylor v. AFS Technologies, Inc.*, 2010 WL 3283570, at *1 (D. Ariz. Aug. 18, 2010). A party may only be sanctioned, however, if he had some notice the evidence was potentially relevant to pending or reasonably foreseeable litigation. *See United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009); *Leon*, 464 F.3d at 958 (9th Cir. 2006).

Rule 37 and the court's inherent authority contemplate a wide range of potential sanctions, including include dismissal of the case or exclusion of evidence. *Pirv. v. Glock, Inc.*, No. 06-CV-145, WL 54466, at *5 (D. Or. Jan. 8, 2009). A court may also enter an order (1) excluding spoiled evidence; (2) admitting evidence of the circumstances of the destruction or spoliation; or (3) instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Under its "inherent powers," a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." *Id.* (citation omitted). A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* at 649 (internal quotation marks and citation omitted). The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id.*

    **B.**    **Defendant Should be Sanctioned For Accessing Dr. Baltzell's E-mail Account And Wrongfully Deleting, Restricting And/Or Removing His E-mails In Order To Preclude Him From Accessing Relevant Evidence.**

1.    **Sanctions Are Warranted Against Defendant Pursuant
To Rule 37 Of The Federal Rules of Civil Procedure**.

Rule 37 provides that, absent exceptional circumstances, a party may not be sanctioned for failure to provide electronically stored information when such information is lost as a result of the routine, good-faith operation of an electronic information system. *See* Fed. R. Civ. P. 37(e). Defendants' actions in altering Dr. Baltzell's access to information previously available through his email account is not part in parcel of the routine, good-faith operation of an electronic information system; hence, Defendant's conduct is subject to sanctions under Rule 37.

Here, Mr. Jorgensen determined that Defendant orchestrated various changes to Dr. Baltzell's email account that directly impacted and restricted Dr. Baltzell's access to and storage of his emails, namely, the seventy (70) email archive folders set up and used by Dr. Baltzell and the emails contained within such files were removed by Defendant from Dr. Baltzell's account. Jorgensen Decl., pp. 7-8. The various changes made by Defendant coincided with Defendant's own preservation efforts and were not the product of routine electronic operations. The consequences of the email system changes was to deprive Dr. Baltzell the ability to access possibly thousands of emails spanning many years while Defendant enjoyed unobstructed access to such e-mails. Despite notice of the issue in August 2014, Defendant did nothing to restore Dr. Baltzell's access during the period of August 2014 through January 2015, just prior to the commencement of a majority of depositions in this case. Baltzell Decl., ¶6. Then in January 2015, Defendant's IT Department repopulated some of Dr. Baltzell's email folders and archive files, which were at all material times, maintained on Defendant's servers or email repositories. Jorgenson Decl., ¶8, p. 6. On February 3, 2015, Dennis Odobasic advised Dr. Baltzell that his archive files had been deleted. Baltzell Decl., ¶8. Dr. Baltzell did not delete his archive files. *Id.* at ¶10. The archive files, and their contents, were removed from Dr. Baltzell's email account by Defendant. Jorgensen

Decl., p. 7-8.  Despite Defendant's recent effort to return Dr. Baltzell's access to approximately seventy (70) of his files was not returned.  *Id.* at pp. 7-8.

Based on the foregoing, this Court should impose sanctions under Rule 37.

> **2.    Sanctions Are Warranted Against Defendant Pursuant To This Court's Inherent Authority**.

Spoliation is "the destruction or *significant alteration of* evidence, or the failure to preserve property for another's use as evidence, in pending or reasonably foreseeable litigation."  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (internal quotation marks and citation omitted) (emphasis added).  A party has a duty to preserve evidence when it knows or reasonably should know the evidence is potentially relevant to the litigation and when the destruction of same prejudices the opposing party.  *United States of America v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002) (a party "engage[s] in spoliation of [evidence] as a matter of law only if they had some notice that the [evidence was] potentially relevant to ... litigation before [it was] destroyed").  Sanctions are proper if Defendant had knowledge and/or notice that the evidence in dispute was "potentially relevant" to the case and Plaintiffs were prejudiced by Defendant's conduct.  *U.S. ex rel. Berglund v. Boeing Co.*, 835 F. Supp. 2d 1020, 1050-51 (D. Or. 2011).

> **a.    Defendant Knowingly Failed To Preserve Key Material Evidence**.

Defendant had an "affirmative duty" to preserve potentially relevant evidence to the best of its ability.  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1073-74 (N.D. Cal. 2006); *Jones v. Bremen H.S. Dist.* 228, 2010 WL 2106640, at *6 (N.D. Ill. May 25, 2010) ("[P]arties must take positive action to preserve material evidence").  Notwithstanding, the undisputed evidence reflects that Defendant altered Dr. Baltzell's access to documents that he maintained in his banfield.net e-mail account **during the midst of this litigation** and after its duty to preserve was triggered**.**  Jorgensen Decl., p. 8.  Indeed, on February 14, 2014, the very date on which Defendant

created a new Outlook repository on Dr. Baltzell's computer, Defendant served its Initial Rule 26 Disclosures in which Defendant represented that emails and attachments are relevant to this action.[2]  Thus, it follows that Defendant's actions qualify as spoliation of relevant evidence as stated by Defendant in its own Initial Rule 26 disclosures.  *See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 508 (D. Md. 2010) (party's deliberate decision to return a hard drive to Office Max limited access to the materials and constituted willful spoliation); *Boeing*, 835 F. Supp. 2d at 1050 (spoliation for failure to produce and preserve hard drive).

Indeed, Defendant not only altered Dr. Baltzell's access to information housed on the Defendant's server during the litigation, but Defendant also removed copies of archived files that were housed on Dr. Baltzell's local computer.  *See* Jorgensen Decl., p. 8.  When Dr. Baltzell attempted to retrieve such documents from his e-mail account for use in discovery and production to Defendant in this litigation, Dr. Baltzell discovered for the first time that all such e-mails and documents had vanished from his account.  *See* Baltzell Decl.,  ¶2.  At no point did Dr. Baltzell delete emails.  *Id.* at ¶9.  Thus, Defendant, and Defendant only, restricted Dr. Baltzell's access to highly relevant evidence.

### b.    Defendant's Actions Have Resulted In Prejudice To Plaintiffs.

"Prejudice is determined by looking at whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoiling party to rely on incomplete and spotty evidence." *Boeing,* 835 F. Supp. 2d at 1052 (citing *Leon,* 464 F.3d at 959).

Here, by altering Dr. Baltzell's access to email messages and subsequently deleting the email messages themselves, Defendant hampered, obstructed and eliminated Plaintiffs' ability to

---

[2]  A copy of Defendant's Initial Rule 26 Disclosures are annexed to the Patel Decl. as Exhibit "B."

construct a complete record of events relating to Plaintiffs' support and services claim and Defendant's actions to deny same to Plaintiffs after Dr. Fees was sexually harassed. But Defendant did not stop at deleting Dr. Baltzell's emails and altering his access to information maintained on Defendant's server. Defendant, thereafter, intentionally kept copies of Dr. Baltzell's emails for its own use in the litigation and deliberately manipulated Plaintiffs' access to such documents. No doubt, Defendant obtained an unfair tactical advantage in this case by restricting Plaintiffs' access and also gained a tactical advantage by forcing Plaintiffs to spend time and money ferreting out this misconduct. *See, e.g., Tesar v. Potter,* No. 9:05–00956–SB, 2007 WL 2783386, at *8 (D.S.C. Sept. 21, 2007) ("[D]ishonest litigants have a distinct advantage over their honest adversaries, for the victimized opponent winds up ... consuming substantial resources to respond to and 'undo' the victimizers' lies and distortions." (internal quotation marks, and citation omitted)).

As noted herein, Plaintiffs, through counsel, specifically raised this issue with Defendants' attorneys, at which time Mr. Martson represented that Defendant need not produce documents that were once in Plaintiffs' possession. Patel Decl., ¶2 Apparently, Defendant (and its attorneys) believes that Defendant may unilaterally, and without notice, destroy Plaintiffs' access to emails saved on Defendant's server in the middle of litigation despite the fact that Plaintiffs once had access to such documents. Removing Dr. Baltzell's access to his email account is tantamount to destruction of evidence as Defendant has not and is refusing to provide Dr. Baltzell access to such documents. Remarkably, Ms. Harris Crowne stated that this issue is likely a product of user error. Patel Decl., ¶4. Certainly, the analysis of Mr. Jorgensen, the real forensic expert in this case, indicates otherwise.

Finally, Plaintiffs submit that Defendant intends to seek summary judgment on this entire litigation, to which Plaintiffs are now forced to formulate their opposition based on a limited record. There is no doubt that Plaintiffs' ability to present their case and defend against

Defendant's forthcoming summary judgment motion has been forever compromised.  Plaintiffs here need not show that particular spoliated evidence contained crucial information, but only relevant information.  *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 133 (S.D. Fla. 1987).  At a bare minimum, the fact that Defendant used six (6) emails that it excised from Dr. Baltzell's email account is proof that the email information is relevant to this cause.

### 3.    This Court Should Award To Plaintiffs An Appropriate Remedy.

As noted above, a court may enter an order (1) excluding spoiled evidence; (2) admitting evidence of the circumstances of the destruction or spoliation; or (3) instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party.  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  Neither of these sanctions is sufficient under the circumstances.  Severe sanctions are appropriate when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" or "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon*, 464 F.3d at 958.

Before a district court imposes the sanction of dismissal, it must weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).  A finding of "willfulness, fault or bad faith" is required before the district court may dismiss a party's claim. *Id*. at 348 (quotations and citation omitted).  Due process concerns further require a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression "threaten[s] to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds*

*Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983); *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) (default entry violated due process where the sanctioned party's deception was wholly unrelated to the merits of the controversy).

Each of the five factors ameliorate in favor of dismissal of Defendant's defenses and counterclaim. As noted in Section II.B.2.b., *supra*, it is without question that Defendant's action in removing and/or restricting Dr. Baltzell's access to certain email files has greatly impeded the resolution of this case. Indeed, Defendant intends to file a case-dispositive summary judgment motion and Plaintiffs will be prejudiced if they are required to move forward without the spoliated evidence. Moreover, Dr. Baltzell and his counsel have been attempting to resolve this matter for over nearly eight (8) months to no avail, which ultimately forced Plaintiffs to retain the services of Mr. Jorgenson and his team a few months ago.

In considering the fifth (5th) factor of the adequacy of less drastic sanctions before dismissing a party's case, the district court must: (1) explicitly discuss the feasibility of less drastic sanctions and explain why such alternate sanctions would be inappropriate; (2) attempt to implement alternative sanctions before ordering dismissal; and (3) warn the party of the possibility of dismissal before ordering dismissal. *See Anheuser–Busch, Inc.,* 69 F.3d at 352. Restoring Dr. Baltzell's access at this late date will cause delay and would otherwise defeat the public's interest in expeditious resolution of litigation and undermine this court's management of its dockets by extending the discovery deadline. As noted above, lesser sanctions such as exclusion of evidence or an adverse inference is not sufficient here. Defendant has had an opportunity to cull through Dr. Baltzell's email account with unfettered access in an attempt to manipulate the evidence in its favor. This is the second time (i.e., the first time was in the Goldberg Litigation) that Defendant has taken such actions, which appear to be a part of its overall litigation strategy.

The pre-dismissal requirement that of willfulness, bad faith and fault is demonstrably met.

A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were discarded." *See Leon,* 464 F.3d at 959; *In re Napster, Inc.,* 462 F.Supp.2d at 1067 ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). Motive or degree of fault in destroying the evidence may be considered when choosing the appropriate sanction. *See Advantacare Health Partners L.P. v. Access IV,* No. C 03–04496 JF, 2004 WL 1837997, *4 (N.D. Cal. Aug. 17, 2004).

Here, a totality of Defendant's unexplainable and unjustified conduct in this litigation overwhelmingly supports a finding of willfulness and bad faith. Defendant entered into Dr. Baltzell's e-mail account in order to delete and/or remove evidence so that Dr. Baltzell could not rely upon it for purposes of this litigation. *Leon*, 464 F.3d at 959 (finding bad faith where employee's willful deletion of computer files on employer's laptop impaired employer's ability to defend, as files were likely crucial to employer's defense). It is beyond dispute that Defendant knew that the evidence it was withholding was relevant and that it was destroying or altering Dr. Baltzell's access to information that was potentially and actually relevant to Plaintiffs' claims and Defendant's defenses. Notably, at the depositions of Dr. Fees and Dr. Baltzell, Defendant used seven (7) previously unproduced email messages, six (6) of which were derived from Dr. Baltzell's[3] email account.[4] These email correspondences were used in order to ambush Plaintiffs,

---

[3] A copy of the six (6) e-mail messages from Dr. Baltzell's email account are annexed to the Patel Decl. as Exhibit "C."

[4] Notably one (1) of the unproduced email messages that was used at Dr. Fees' deposition is an email between Dr. Fees and Bruce Berning. A copy of this email is annexed to the Patel Decl. as Exhibit D. Exhibit D is responsive to Request Number 25 in Plaintiffs' First Request for Production for Documents, which expressly seeks all communications between Dr. Fees and Mr. Berning. Yet, it was inexplicably withheld from production by Defendant, indicating that there may be additional discovery violations related to Defendant's email communications.

Page 16: **PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT BASED ON ITS SPOLIATION OF EVIDENCE FROM DR. THOMAS L. BALTZELL'S E-MAIL ACCOUNT**

and more specifically, Dr. Baltzell and Dr. Fees, at their respective depositions without letting them have an opportunity to review relevant documents in preparation for their respective depositions.[5]  For example, Defendant always intended to challenge Dr. Fees' performance and credibility as evidenced by its request for documents.  Indeed, in Request Number 94, Defendant sought "all documents evidencing or relating to any complaint or express of concern made about Dr. Heather Fees, or any comment made about her performance as an owner, manager, or veterinarian, by any of Your employees."  Plaintiffs' responded that no such documents exist.[6]  Unbeknownst to Plaintiffs, Defendant had copies of emails exchanged between Dr. Baltzell and Dr. Fees, in which Dr. Baltzell had criticized Dr. Fees.  These emails were not available to Plaintiffs, who were, thus, unable to adequately respond to Defendant's request for production or prepare for their own depositions.

Moreover, on several different occasions, Defendant was given an opportunity to provide Dr. Baltzell with the missing information and refused.  *Supra* at ¶¶4-10.  This indisputably constitutes willful conduct.  Thus, even if this Court were to conclude that Defendant did not intend for the changes to its email system (reinstallation of Outlook in February 2014, commencement of archiving in March 2014, and reinstallation of Windows in January 2015) to remove and/or restrict Dr. Baltzell's access to his own emails, Defendant's subsequent refusal to provide access to such documents demonstrably constitutes bad faith as Defendant's conduct was designed to prejudice Plaintiffs in this case.   This Court should not condone Defendant's actions and, instead, should impose the appropriate sanctions against it.  *See Southeastern Mechanical Servs, Inc. v. Brody,*

---

[5] When asked about the use of the unproduced documents throughout the depositions of Dr. Baltzell and Dr. Fees, Defendant's counsel simply stated that these are "Discovery issues we'll deal with later." Unfortunately for Defendant, these are serious issues and the time has come to address them.

[6] A copy of Plaintiffs' Response to Defendant's Second Request for Production of Documents is annexed to the Patel Decl. as Exhibit "E."

657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009) (finding bad faith where defendant had opportunity and motive to delete all data from Blackberry and only explanation could be attributed to "deliberate and intentional actions").

Finally due process requires a review of the nexus between the sanction, the misconduct and the matters in controversy. As noted above, neither this Court nor Plaintiffs know the extent and relevance of the missing information. However, some of the information Defendant obtained from Dr. Baltzell's email account was demonstrably relevant as Defendant used it in connection with Dr. Baltzell and Dr. Fees' depositions. As such, there is a substantial nexus between the misconduct and the matters in controversy, thus, warranting the ultimate sanction of dismissal which this Court has previously granted in another matter. *See Boeing*, 835 F. Supp. 2d at 1055.

Finally, monetary sanctions are also warranted, including reasonable attorneys' fees and costs, and all costs associated with the retention of Mr. Jorgenson. Plaintiffs request an evidentiary hearing on the issue of monetary damages.

## III.  <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs, Grove City Veterinary Service, LLC, Heather M. Fees, DVM, Heather Fees, DVM, LLC, Thomas L. Baltzell, DVM and Polaris Veterinary Service, LLC, respectfully request that this Honorable Court enter an Order: (i) expediting the briefing on this Motion (ii) granting their instant Motion; (iii) striking Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint; (iv) permitting an adverse jury inference instruction (v) awarding Plaintiffs their attorneys' fees and costs incurred in this litigation, as well as Plaintiffs' expenses in connection with their retention of John E. Jorgensen; and (vi) granting such other and further relief as this Honorable Court deems just and proper.

In the alternative, if this Honorable Court is not inclined to strike Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint; Plaintiffs respectfully request

that this Honorable Court enter an Order: (i) compelling Defendant to provide Mr. Jorgensen with

access to its Exchange Server so that Plaintiffs may determine the precise period of time for which

Defendant deleted, removed and/or restricted Dr. Baltzell's access to his e-mails; (ii) awarding

Plaintiffs their attorneys' fees and costs incurred in connection with their continued retention of

Mr. Jorgensen; and (iii) granting such other and further relief as this Honorable Court deems just

and proper.

DATED:  May 6, 2015.

Respectfully submitted,

LAW OFFICES OF JUDY SNYDER
Judy Danelle Snyder, OSB#732834
1000 SW Broadway, Suite 2400
Portland, OR 97205
(503) 228-5027

And

ZARCO EINHORN SALKOWSKI & BRITO, P.A.

By:  /s/ Himanshu M. Patel
         ROBERT ZARCO
         Florida Bar No. 502138
         rzarco@zarcolaw.com
         HIMANSHU M. PATEL
         Florida Bar No. 0167223
         hpatel@zarcolaw.com
         ALAINA B. SIMINOVSKY
         Florida Bar No. 70644
         asiminovsky@zarcolaw.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on May 8, 2015, I electronically filed the foregoing Motion for Sanctions Against Defendant Based on its Spoliation of Evidence from Dr. Thomas L. Baltzell's E-mail with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Caroline Harris Crowne, Esq.** (caroline.harris.crowne@tonkon.com), **Ryan M. Bledsoe, Esq.** (ryan.bledsoe@tonkon.com) and **William Marston, Jr., Esq.** (rick.marston@tonkon.com), and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  None.

DATED:  May 8, 2015.

By: /s/ Himanshu M. Patel
Himanshu M. Patel