UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GROVE CITY VETERINARY
SERVICE, LLC, HEATHER M. FEES,
DVM, HEATHER FEES, DVM, LLC,

THOMAS L. BALTZELL, POLARIS
VETERINARY SERVICE, LLC,

                              Plaintiff,

        v.

CHARTER PRACTICES
INTERNATIONAL, LLC,

                              Defendant.

No. 3:13-cv-02276-AC

OPINION AND ORDER

_____

Judge ACOSTA, Magistrate Judge:

        Plaintiffs Grove City Veterinary Service, LLC, Heather M. Fees, DVM ("Fees"), Heather

Fees, DVM, LLC, Thomas L. Baltzell, DVM ("Baltzell"), and Polaris Veterinary Service, LLC

OPINION AND ORDER - 1                                                                    [RMD]

(collectively "Plaintiffs") filed this lawsuit against Defendant Charter Practices International, LLC ("CPI") for breach of contract and for violation of federal and state civil rights statutes. Currently pending is CPI's motion for summary judgment. (Dkt. No. 126.) However, before CPI filed its motion for summary judgment, Plaintiffs filed a motion for sanctions in which they allege CPI committed spoliation of evidence by deleting Baltzell's archived work emails. Plaintiffs request the court impose dispositive sanctions and dismiss CPI's affirmative defenses to remedy CPI's alleged wrongdoing. CPI denies it is responsible for "missing" emails, and in their response, requested an award of attorney fees because of Plaintiffs' "unjustified" motion for sanctions. After reviewing the record, the court concludes Plaintiffs have not met their burden of showing they are entitled to sanctions. Therefore, Plaintiffs' Motion for Imposition of Sanctions for Spoliation of Evidence ("Motion for Sanctions") is denied.

### Factual Background

Baltzell and Fees are veterinarians. (Compl. ¶ 18.) They serve the public through veterinary hospitals owned and operated by CPI. (Compl. ¶¶ 18-19.) Pursuant to this arrangement, Baltzell and Fees entered into a "Charter Agreement" with CPI which articulates the terms of the business relationship. (Compl. ¶ 18.) The Plaintiffs now contend CPI breached that Charter Agreement and are liable under federal and state civil rights statutes. (Compl. ¶¶ 85-129.)

Baltzell maintains a continuing business relationship with CPI and continues to use an email system hosted on CPI's servers. (Decl. of Erik Holland in Supp. of Def.'s Resp. to Pl's Mot. for Sanctions ("Holland Decl.") ¶ 4.) In February 2014, CPI's IT department made significant changes in the company email system used by CPI employees. (Holland Decl. ¶ 7.) Of note, CPI updated the email platform, but also created an email-archiving system whereby emails that are six-months

old or older automatically transfer from an employee's active inbox and into an archive inbox. (Holland Decl. ¶ 11.)  To the extent employees, including Baltzell, had organized their emails in inbox folders, that organization system remained in place after the archiving process.  (Decl. of Thomas L. Baltzell in Supp. of Pl.'s Mot. for Sanctions ("Baltzell Decl.") Ex. D at 1) (emails retained folder organization after archiving).  As part of the email-system update, CPI's IT department also downsized the on-computer email storage system.  (Affidavit of John Jorgensen ("Jorgensen Decl.") ¶ 5.)

During discovery for this case, Baltzell was required to search for and produce emails stored in his email archive responsive to CPI's requests for production.  (Baltzell Decl. ¶ 2.)  In August 2014, Baltzell attempted to access old emails stored in his email archive, but was unable to locate more than one-hundred folders of archived emails.  (Baltzell Decl. ¶ 2.)  On August 15, 2014, Baltzell contacted CPI's IT department for help finding the "missing" emails.  (Jorgensen Decl. Ex. C at 3.)  A member of the CPI IT department requested a time when he could come and assist Baltzell.  In Baltzell's response, he disclosed that he sought the emails "[r]egarding a legal matter . . . ."  (Jorgensen Decl Ex. C at 1.)  Because Baltzell's request was in furtherance of a legal matter, the IT department referred the issue to CPI's legal department, which refused further assistance and advised Plaintiffs that CPI was not responsible for locating documents responsive to its own discovery requests.  (Baltzell Decl. Ex. A at 1.)

In December 2014 and January 2015, CPI IT's Senior Systems Analyst Denis Odobasic ("Odobasic") emailed Baltzell to determine whether the issue had been resolved.  (Decl. of Denis

Odobasic in Supp. of Def.'s Resp. to Pl.'s Mot for Sanctions ("Odobasic Decl.") ¶¶ 4-5.)[1]  Baltzell responded that "some," but not all, of the missing folders had repopulated to his archive inbox. (Baltzell Decl. ¶ 9.) Eventually, more archived email folders became available in Baltzell's archived email box, but he contends some remain inaccessible. (Baltzell Decl. ¶¶ 9, 11.)

### Legal Standard

When a party disobeys a court order during discovery, the court may impose sanctions on the offending party.  The court has two sources of sanctions authority.  First, Federal Rule of Civil Procedure 37 ("Rule 37") permits the court to impose sanctions for, among other things, failing to attend a deposition, failing to obey a discovery order, failing to produce documents in discovery, or failing to supplement discovery.  FED. R. CIV. P. 37(b)-(c).  "The definition of 'order' in Rule 37(b) has been read broadly," and the court may award sanctions for violation of a court's request in oral proceedings, so long as the court's order is "unequivocal." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (citing *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974)).  Whether or not a violation justifies imposition of Rule 37 sanctions is largely "left to the discretion of the trial court." *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981) (citing *National Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976)).  However, sanctions under Rule 37 arise only in situations contemplated by the Rule's text. *Unigard*, 982 F.2d at 368.  Rule 37 "does not extend to situations in which the rule is 'inapplicable by its very terms,' even when general discovery misconduct is alleged." *Id.*

When the moving party raises a motion for sanctions for failure to produce electronically

---

[1]Plaintiffs moved to strike the Odobasic Declaration as untimely filed, but at oral argument, Plaintiffs dropped their opposition and the court denied their motion to strike as moot. (Dkt. Nos. 168, 179.)

stored information ("ESI"), the court's authority is slightly constrained under Rule 37. Rule 37(e) provides: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good faith operation of an electronic information system." FED. R. CIV. P. 37(e). The destruction of emails as part of a regular good-faith function of a software application may not be sanctioned absent exceptional circumstances." *Coburn v. PN II, Inc.*, No. 2:07-CV-00662-KJD, 2010 WL 3895764, at *3 (D. Nev. Sept. 30, 2010).

Second, the court has the "inherent power" to levy sanctions for misconduct by the litigants. *Id.* "Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Unigard*, 982 F.2d at 368 (quoting *Chambers v. NASCO, Inc.* 501 U.S. 32 (1991)). This includes the authority to, among other things, exclude evidence whose use at trial "would unfairly prejudice an opposing party." *Unigard*. 982 F.2d at 368. Similar to the court's authority under Rule 37, the court has "broad discretion" to shape discovery and evidentiary rulings "conducive to the conduct of a fair and orderly trial." *Unigard*, 982 F.2d at 368. However, the court will generally exercise its inherent authority only where a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Coburn*, 2010 WL 3895764, at *3.

In extraordinary circumstances, the court may apply "dispositive sanctions" and dismiss a party's claim or defense. However, the court should impose dispositive sanctions only where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Before imposing the "harsh" remedy of dispositive sanctions, the court should consider the following factors: "(1) the

public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* The court need not make explicit findings regarding each factor, but to levy dispositive sanctions the court must specifically find that a party was at fault for the complained-of conduct, acted willfully, or acted in bad faith. *Id.* "Additionally, the court must consider 'less severe alternatives' than outright dismissal." *Id.*

*Discussion*

Plaintiffs contend they are entitled to dispositive sanctions against CPI because CPI: (1) destroyed or otherwise made unavailable Baltzell's archived emails; (2) refused to help locate the emails when Plaintiffs raised the issue; (3) imposed a "litigation hold" on Baltzell's email account. CPI denies it deleted Baltzell's emails and argues it is entitled to attorney fees under Rule 37 because Plaintiffs' Motion was legally unjustified.

I. "Spoliation" of Archived Emails

Plaintiffs contend CPI is responsible for deleting or removing hundreds of archived emails from Dr. Baltzell's email account. CPI argues it did not tamper with Dr. Baltzell's archived emails and had nothing to do with Dr. Baltzell's emails going missing. In an attempt to explain why the emails are missing, it presents its own theory to explain why the emails were difficult to locate.

A defendant may be subject to sanctions, particularly dispositive sanctions, only if it committed "willful" spoliation of evidence. *Leon,* 464 F.3d at 959. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Id.* (emphasis original) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). A party cannot rely

on a "presumption of irrelevance" to defeat a motion for sanctions on the basis of spoliation because "the relevance of destroyed documents cannot be clearly ascertained." *Leon*, 464 F.3d at 959 (brackets and ellipses omitted).

Here, Plaintiffs do not establish that the emails were willfully destroyed by CPI, or even that the emails were destroyed at all. Plaintiffs contend that in 2014, after CPI updated its email archiving system and email platform, hundreds of folders in which Dr. Baltzell organized his emails were deleted. In support of their argument, Plaintiffs introduce a report (the "Jorgensen Report") authored by Forensic Computer Analyst John Jorgensen ("Jorgensen"). In it, Jorgensen concludes CPI remotely accessed Baltzell's computer and deleted the emails. Although Jorgensen's conclusions purportedly flow from his "forensic analysis" of Baltzell's computer, Jorgensen produced no data reports or other evidence to support his conclusions. Instead, he relies heavily on circumstantial evidence and the temporal proximity between CPI's email-system update and the date on which Baltzell first noticed the emails were "missing." Jorgensen also produces no evidence which shows CPI's IT department remotely accessed Baltzell's computer without permission or tampered with Baltzell's archived emails in any way.

In fact, Jorgensen omits from his report several facts relevant to assessing the credibility of his conclusions. First, Jorgensen fails to disclose that, during his analysis of Baltzell's computer, the computer was not logged into the CPI's servers where the archived emails are stored. (Holland Decl. ¶ 26.) Because he was not logged into the servers, he would not have been able to access the archived emails even if they were readily available in Baltzell's archived email inbox. Second, Plaintiffs did not dispute CPI's assertion at oral argument that Jorgensen created and analyzed an "activity log" which documented each time someone remotely accessed Baltzell's computer.

OPINION AND ORDER - 7                                                        [RMD]

Plaintiffs also did not dispute the accuracy of an excerpt of the log, which CPI produced at oral argument.  The excerpt of the activity log showed that CPI IT last remotely accessed Baltzell's computer on July 2, 2014, well before Baltzell had difficulty finding the emails in question.  The absence of the activity log in the record is telling and suggests Jorgensen found no direct evidence of knowing wrongdoing by CPI.

Despite Plaintiffs bearing the burden of proof on their sanctions motion, CPI produced evidence that the missing emails were accessible in Baltzell's email archive, but that they had been "dragged and dropped" into a folder not typically associated with archived emails.  In support of its theory, CPI introduced a document showing the electronic location of each email folder in Baltzell's email archive.  It demonstrates that the "missing" archived emails were, at all relevant times, located in a portion of Baltzell's email archive generally not associated with email storage.  (Holland Decl. Exs. 2-3.)  Specifically, as of the time CPI searched Baltzell's email, the "missing" archive email folders were housed under the "Notes" tab of Baltzell's archived mailbox.  No email dated after December 11, 2014, can be found in the "Notes" folder, and CPI contends Baltzell accidentally dragged his archived inbox into the "Notes" folder some time in early December 2014.

Although CPI relies primarily on circumstantial evidence to form its "drag-and-drop" theory, its evidence is more persuasive than that produced by the Plaintiffs, who bear the burden of proof on this motion.  Based on the totality of the record, the court is persuaded that CPI's "drag-and-drop" theory is more plausible than Plaintiffs' theory of deliberate spoliation.  Plaintiffs have not responded to Defendant's "drag-and-drop" theory or carried their burden of demonstrating CPI is responsible for the "spoliation" of the "missing" emails.

Even if Plaintiffs' theory of intentional spoliation was supported by the record, the Plaintiffs

OPINION AND ORDER - 8                                                              [RMD]

made no attempt to obtain redress through a motion to compel, and otherwise made no attempt to inform the court of the alleged spoliation prior to filing its motion for sanctions. Plaintiffs contend Baltzell first had problems finding his archived emails in August 2014. Since then, the court has held five discovery status conferences, Plaintiffs have filed three motions to compel, and Plaintiffs have emailed the court four times to raise discovery issues. (Dkt. Nos. 59, 65, 69, 75, 92, 106, 108, 132.) In none of those hearings, motions, or emails did Plaintiffs inform the court that CPI had deleted and possibly withheld hundreds of emails which may have been responsive to CPI's discovery requests. Because Plaintiffs did not raise this issue during the nine months preceding their motion, the court concludes they are not entitled to sanctions at this time.

II.  Conduct of CPI's IT Department and CPI's Attorneys

Plaintiffs next contend CPI's response to Baltzell's request for help finding the emails warrants sanctions. Specifically, Plaintiffs contend that, when Baltzell requested CPI's assistance in finding the missing emails, CPI IT personnel did not respond to Baltzell's emails or otherwise attempt to assist him for months. CPI disputes Plaintiffs' contention that it offered no assistance. Moreover, CPI argues that, given the nature and form of Baltzell's request for IT-department assistance, it had no responsibility to aid Baltzell in fulfilling his discovery duties.

Baltzell first asked for assistance on August 15, 2014, when he wrote to the CPI IT department, "I was searching for an older email and realize it is no longer in my mail or archive. How can I retrieve older messages?" (Baltzell Decl. Ex. A at 2.) Three days later, Faryar Nasseri ("Nasseri") of CPI Technical Support responded with the following:

> I would be happy to address this email issue. When and where would be a good time to contact you? To help us answer any questions regarding this email would you be able to say how old the email is or when you received it?

OPINION AND ORDER - 9                                                      [RMD]

Baltzell explained that he would be looking for emails "as far back as 2010" "[r]egarding a legal matter . . . ." (Baltzell Decl. Ex. A at 1.) Because the request for assistance related to "a legal matter," Nasseri referred Baltzell's request to the CPI legal department, writing: "Hello legal team, Can you assist Dr. Baltzell with his email questions and legal concerns?" (Baltzell Decl. Ex. A at 1.) When Baltzell received no further response to his request, Plaintiffs' attorneys called CPI and requested access to "files from [Baltzell's] email archive from 2010 to the present." (Baltzell Decl. Ex. A at 1.) However, CPI "responded that it was not Defendant's obligation to assist Plaintiff to access such documents" responsive to CPI's discovery requests. ((Patel Decl. ¶ 2.) In January and February 2015, Odobasic attempted to help Baltzell locate the emails but was ultimately unsuccessful. (Odobasic Decl. ¶¶ 6-8.) Because Odobasic could not find the email folders, he elevated Baltzell's issue to the "next level in [CPI's] IT department and sent an email to Dr. Baltzell informing him of that." (Odobasic Decl. ¶ 11.)

The court concludes that CPI's response to Baltzell's request for assistance does not warrant sanctions. First, aside from hosting the archive email system on CPI's servers, CPI does not maintain individual archive email boxes, and the weight of the evidence suggests CPI was not involved in the "disappearance" of Baltzell's archived email folders. Because CPI is not responsible for deleting or making unavailable Baltzell's archived emails, they were under no heightened obligation to give aid finding the emails, and their failure to find the "missing" emails before Plaintiffs filed this motion does not give rise to a motion for sanctions. Second, Baltzell explained in his request for assistance that he needed to locate the emails "[r]egarding a legal matter." CPI IT personnel were not wrong to refer the request to CPI's legal department for guidance, and CPI was not under a duty to assist Plaintiffs in responding to CPI's requests for production. *See Play Visions,*

*Inc. v. Dollar Tree Stores, Inc.*, No. C09-1769 MJP, 2011 WL 2292326, at *2 (W.D. Wash. June 8, 2011) (the parties agreed, and court did not find to the contrary, that the defendant was under no duty to assist plaintiff in locating documents responsive to the defendant's discovery requests). Third, once Baltzell clarified his request for assistance, CPI, through Odobasic, made a good-faith effort to locate the archived emails. Although Odobasic's attempt to locate the emails was ultimately unsuccessful, his response to Baltzell's request demonstrates CPI took concrete steps to find the archived emails in question. Fourth, as the court discussed *infra*, Plaintiffs did not seek to obtain the documents through a motion to compel despite the opportunity to do so. Therefore, CPI's behavior in response to Baltzell's request does not warrant sanctions.

## III.  Litigation Hold

Plaintiffs contend sanctions are warranted because CPI imposed a "litigation hold" on Baltzell's email account to retain documents unavailable to Plaintiffs during this litigation. Plaintiffs claimed at oral argument that CPI's litigation hold was "worse than spoliation" because unlike evidence unlawfully destroyed by a party, evidence placed in a litigation hold is still available to the party implementing the litigation hold. CPI contends the litigation hold is a standard technique for retaining documents relevant to pending litigation and should not result in sanctions.

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). A tool commonly used by organizations to comply with this duty is the litigation hold. Typically, a litigation hold is a "notice issued in anticipation of a lawsuit or investigation, ordering employees to preserve documents and other materials relevant to that lawsuit or investigation." BLACK'S LAW DICTIONARY 800 (9th ed. 2009).

OPINION AND ORDER - 11                                                    [RMD]

"It is difficult to imagine any document-focused litigation in which parties fail to implement litigation holds." Don Zupanec, *Preservation of Evidence – Spoliation – No Written Litigation Hold* 26 No. 7 Fed. Lit. 9 (2011) (discussing the ubiquitous nature of litigation holds in cases with organizational litigants). In fact, where a party's failure to implement a litigation hold results in the destruction of relevant documents, it can result in sanctions against it. *See Knickerbocker v. Corinthian Coll.*, 298 F.R.D. 670, 682 (W.D. Wash 2014) (granting plaintiff's motion for sanctions where the defendant failed to impose a litigation hold on documents in its possession, resulting in destruction of evidence.)

The litigation hold to which Plaintiffs object is not a typical, voluntary litigation hold, pursuant to which CPI employees retain documents they would otherwise delete. Instead, CPI's litigation-hold system is a computer program applied to Baltzell's email account which "retains copies of any emails that the account holder (or anyone else) deletes and purges from the mailbox." (Holland Decl. ¶ 17.) Therefore, CPI's electronic litigation hold activates only when Baltzell attempted to delete an email in his inbox or archived inbox, at which time the computer program would duplicate the email and store that copy in a centralized location on CPI's servers. (Holland Decl. ¶ 17.) Plaintiffs have presented nothing but conjecture to show that the litigation hold's purpose was to withhold relevant evidence from Plaintiffs.

The court concludes CPI's use of the litigation hold is not grounds for imposing sanctions. Because Plaintiffs have not demonstrated sufficient cause exists for imposing sanctions on CPI, the court denies Plaintiffs' Motion for Sanctions.

IV.  CPI's Request for Attorney Fees

CPI argues it is entitled to attorney fees under Rule 37 because Plaintiffs' motion was not

"substantially justified." Plaintiffs did not address CPI's request for attorney fees in their Reply. The court concludes that, although Plaintiffs did not prevail on their motion for sanctions, their motion was not unjustified, and Defendants are not entitled to attorney fees.

Federal Rule of Civil Procedure ("FRCP") 37 provides that if a motion for sanctions is denied:

> [T]he court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(B). Despite the language of Rule 37 which appears to mandate an award of attorney fees under certain circumstances, the Ninth Circuit has held the court has some measure of discretion in whether to award attorney fees under that section. *Dague v. Dumesic*, 402 Fed. Appx. 218, 219 (9th Cir. 2010) (mem.).

The court declines to award Defendants attorney fees because the court cannot conclude Plaintiff's motion was "unjustified." In this case, a problem occurred in attempting to locate documents relevant to Plaintiffs' discovery duties. After expending significant effort in an attempt to locate the documents, including hiring a forensic computer analyst, the Plaintiffs had few alternatives to seeking court intervention. That Plaintiffs' motion was ultimately unsuccessful does not change the reasonableness of their decision to seek the court's help in divining the location of the "missing" emails at issue. Because Plaintiffs' motion was substantially justified, the court concludes CPI is not entitled to attorney fees under Rule 37(a)(5)(B).

OPINION AND ORDER - 13                                                    [RMD]

*Conclusion*

For the aforementioned reasons, Plaintiffs' Motion for Imposition of Sanctions for Spoliation of Evidence (Dkt. No. 122) is DENIED and Defendants' request for attorney fees (Dkt. No. 140) is DENIED.

DATED this 18th day of August, 2015.

IT IS SO ORDERED

JOHN V. ACOSTA
United States Magistrate Judge